Affirmed and Memorandum Opinion filed December 30, 2004









Affirmed and Memorandum Opinion
filed December 30, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01160-CR

____________

 

FREDERICK DONNELL MEANS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________________

 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 946726

__________________________________________________

 

M E M O R
A N D U M   O P I N I O N

Appellant Frederick Donnell Means
appeals his conviction for arson. 
Appellant asserts the trial court violated his Sixth Amendment right of
confrontation by (1) improperly limiting his cross-examination of the State=s main
witness, and (2) improperly preventing him from developing evidence that would
have established bias on the part of that witness towards appellant.  We affirm.








I.  Factual and
Procedural Background

In March of 2003, appellant lived
with Shirley Moore.  Also living with
them were Moore=s two
sons, her grandmother, Mammie White, and her father, Thomas Keeling.  At that time, Moore was three months behind
on her car payments.  Around mid-March,
Moore asked her father if he would wreck her sport utility vehicle (ASUV@) or knew
someone who would do so.  She also asked
her father=s estranged wife, Jacqueline
Keeling, if she knew anyone who would wreck her SUV because Moore was behind on
the payments.

On the evening of March 21,
Thomas Keeling borrowed his daughter=s SUV to
take White on an errand.  He parked the
SUV outside of the garage when they returned home.  Later that evening, appellant=s brother
called appellant and appellant left Moore=s
house.  About an hour later, Thomas
Keeling heard the garage door open. 
Shortly thereafter, he went out to the garage to get White=s coin
purse from the SUV.  Moore=s SUV was
in the garage and appellant=s brother
was straddling the seat with the SUV=s radio
in his hands.  Thomas Keeling testified
that, in his opinion, the SUV was being Astripped.@  When he returned to the house, Thomas Keeling
told White what he had seen.  Later, he
heard the two vehicles drive off and saw that both appellant=s
vehicle, an older-model, light-colored pickup truck, and Moore=s SUV
were gone.








Around 1:00 a.m. on March 22,
2003, Moore=s SUV was discovered abandoned
under an overpass and aflame. After the fire was extinguished, Captain J.R.
Garza of the Houston Fire Department noticed the radio was missing.  Because of the time of day, the place the SUV
was found, and the fact that it was abandoned, Garza notified Houston Fire
Department arson investigators.  Based on
his observations, arson investigator Raymond Parrish concluded that the fire
was a result of arson.  Parrish
interviewed one witness at the scene, Mr. Fritz, a homeless man living under
the overpass.  He told Parrish that he
saw an older-model, white pickup truck and an SUV pull up under the overpass. Three
people got out of the vehicles and milled around for awhile before the SUV
burst into flames.  The three people left
the scene in the pickup truck.  Mr. Fritz,
however, was unable to describe any of them. 


Thomas Keeling heard and saw
appellant return home around 2:30 a.m. 
Jacqueline Means, appellant=s mother,
testified that appellant was at her house around the same time, dropping off
his brother.  Appellant claimed they had
been partying at a nightclub.  

On the morning of March 22, 2003,
Moore came into her father=s room
and told him that her SUV had been stolen. 
Moore waited until later that morning to make a police report. At that
time, she learned that the police already had recovered her vehicle.  Later that day, Thomas Keeling saw the SUV=s radio
and spare tire in Moore=s
garage.  A few days later, Thomas Keeling
called Moore=s insurance carrier and talked to
an investigator.  He explained that his
daughter=s SUV had
been Atorched,@ but that
she was not at fault.  Thomas Keeling
then called arson investigators and gave a statement implicating
appellant.  Thomas Keeling received $500
for the tip.  Following Thomas Keeling=s
statement, Houston arson investigator Alfredo Martinez inspected the burned SUV
and observed that the spare tire and radio were missing and had not been in the
SUV at the time of the fire.  Arson
investigator Robert Koryciak searched appellant=s vehicle
and found two gas cans and two spare tires in the back of appellant=s
truck.  Martinez determined that one of
the tires was of the same size and type that would be found in an SUV like the
one reportedly stolen from Moore.








At trial, Moore testified that
she had long-standing financial problems and was having trouble making her SUV
payments in March of 2003.  She denied
asking her father to wreck her SUV and claimed that she never told Jacqueline
Keeling that she wanted someone to wreck her vehicle.  Moore testified that she never saw appellant=s brother
at her house that evening.  According to
Moore, appellant left her house around 11:00 p.m. to pick up his brother and to
go to a nightclub.  Moore explained that
her spare tire was in appellant=s truck
because he had fixed a slow leak on one of her tires.  White testified that she never heard Moore
ask Thomas Keeling to wreck her SUV and that Thomas Keeling never told her that
appellant and his brother were stripping Moore=s
vehicle.  Jacqueline Keeling testified
that Moore told her on March 22nd that her SUV had been stolen.  About a week later, Moore told Jacqueline
Keeling that she and her father had argued and that he intended to tell the
police that appellant burned the SUV, but she intended to tell the police that
her father had done it.

Appellant was charged by
indictment with arson.  Appellant pleaded
not guilty.  A jury found appellant
guilty and assessed punishment at 45 years in the Institutional Division of the
Texas Department of Criminal Justice.

II.  Issues and
Analysis

A.        Did the trial court improperly limit
appellant=s cross-examination of the
State=s main witness?

In his first issue, appellant
asserts the trial court violated his Sixth Amendment right of confrontation by
limiting his cross-examination of Thomas Keeling, the State=s main
witness.  Appellant contends that the
trial court improperly prevented him from cross-examining Thomas Keeling about
an allegedly false prior accusation he had made against appellant to Children=s
Protective Services (hereinafter ACPS@).  Appellant argues that such cross-examination
was proper under Texas Rule of Evidence 613(b) because it would have
established bias against appellant on the part of Thomas Keeling.  The State contends that appellant did not
preserve this issue for review.  We agree
that appellant failed to preserve any error with respect to his Sixth Amendment
claim, but find that appellant did preserve his complaint with respect to his
argument under Rule 613(b).








Generally, to preserve a
complaint for appellate review, a party must make a timely request, objection,
or motion with sufficient specificity to apprise the trial court of the
complaint.  Tex. R. App. P. 33.1(a); see Saldano v. State, 70 S.W.3d 873, 886B87 (Tex.
Crim. App. 2002).  As noted above, even
constitutional complaints may be waived by the failure to raise a timely
objection in the trial court.  See
Saldano, 70 S.W.3d at 886B89.  The record reflects that appellant did not
specifically assert deprivation of his right of confrontation in the trial
court, and thus failed to preserve this complaint for appellate review.  See Holland v. State, 802 S.W.2d 696,
699B700 (Tex.
Crim. App. 1991).  Because appellant
failed to assert Confrontation Clause error in the trial court with respect to
the trial court=s
limitation on his cross-examination of Thomas Keeling, he has waived any
complaint based on this claim.  See
Jenkins v. State, 912 S.W.2d 793, 815 (Tex. Crim. App. 1993).

Appellant, however, did preserve
his Rule 613(b) issue for appellate review. 
Specific instances of conduct are admissible for the purpose of
attacking a witness=s
trustworthiness in a particular case because of bias or interest.  See Tex.
R. Evid. 613(b).  On
cross-examination, appellant wanted to demonstrate that Thomas Keeling was
biased against him because Thomas Keeling previously had filed a CPS report
against appellant.  The State lodged an
objection, which the trial court sustained. 
In his bill of exception, appellant stated:

One of the things I
want[ed] to go into was allegations against my client made by Mr. Keeling to
CPS.  I think it=s relevant because it=s going to the witness= [sic] bias and motive in
this case. . . . Before this incident occurred, Mr. Keeling had gone to CPS and
made allegations and CPS investigated and closed the case, basically, saying
there was nothing to support anything they had been told by him.  Again, it goes to credibility.  I feel it=s relevant.  

 

The record reflects that appellant=s counsel
wanted to question Thomas Keeling about the CPS report in an effort to
establish bias and motive and that the trial court prevented that
questioning.  Appellant argued that the
testimony was admissible to show bias and motive towards appellant. 








We review a trial court=s
decision to exclude evidence under an abuse of discretion standard.  See Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996).  An abuse of discretion
occurs when the trial court acts without reference to any guiding rules or
principles.  See Lyles v. State,
850 S.W.2d 497, 502 (Tex. Crim. App. 1993). 
Great latitude should be allowed in cross-examining a witness to reveal
possible bias, prejudice, or self-interested motives to falsify testimony.  Chambers v. State, 866 S.W.2d 9, 26
(Tex. Crim. App. 1993).  The burden of
showing the relevance of particular evidence to the issue of bias rests on its
proponent.  Id. at 26B27.  A specific connection between the witness=s
testimony and the cause, demonstrating an actual bias or motive, must be
established.  Willingham v. State,
897 S.W.2d 351, 358 (Tex. Crim. App. 1995). 
The limits of cross-examination for the showing of bias are within the
trial court=s sound discretion.  Chambers, 866 S.W.2d at 27.  This entails balancing probative value
against prejudicial risks, such as undue prejudice, embarrassment, harassment,
confusion of the issues, and undue delay. 
Id. 

After reviewing the record, we
conclude the trial court did not abuse its discretion.  Appellant argues on appeal that the CPS
report made by Thomas Keeling contained false allegations against
appellant.  He contends that those
allegations are evidence of bias against appellant, which might have caused
Thomas Keeling to slant his testimony in the present case.  The allegations in question, however, were
never shown to be false.  In his bill of
exceptions, appellant asserts only that CPS closed the case because there was
no evidence to support Thomas Keeling=s
allegations, not because the allegations were untrue.  Appellant failed to present sufficient facts
to support his contention that Thomas Keeling=s CPS
allegations could relate to bias or motive by Thomas Keeling to testify
untruthfully against appellant.  The
trial court acted within its discretion when it prevented appellant from
cross-examining Thomas Keeling about the CPS report.  Accordingly, we overrule appellant=s first
issue.

B.        Did the trial court improperly prevent
appellant from developing evidence through the testimony of other witnesses
that would have established bias on the part of the State=s main witness?

 








In his second issue, appellant
argues that the trial court violated his Sixth Amendment right of confrontation
by improperly preventing him from developing evidence that was admissible under
Rule 613(b) and would have established bias on the part of Thomas Keeling   toward appellant.  Specifically, appellant complains the trial
court erred by (1) restricting his cross-examination of Jacqueline Keeling
concerning Thomas Keeling=s
strained relationship with Moore and appellant, and (2) limiting his direct
examination of White and Moore concerning Thomas Keeling=s
responsibilities as a resident in Moore=s
home.  Because the record reveals that
appellant failed to preserve any error on Sixth Amendment grounds and failed to
preserve any error with respect to the excluded testimony, we need not reach
the merits of his complaint on appeal.

Generally, to preserve a
complaint for appellate review, a party must make a timely request, objection,
or motion with sufficient specificity to apprise the trial court of the
complaint.  Tex. R. App. P. 33.1(a); see Saldano v. State, 70 S.W.3d 873, 886B87 (Tex.
Crim. App. 2002).  With few exceptions
not applicable here, even constitutional complaints may be waived by the
failure to raise a timely objection in the trial court.  See Saldano, 70 S.W.3d at 886B89.  The record reflects appellant failed to
preserve his Sixth Amendment claim because he did not specifically assert
deprivation of his right of confrontation in the trial court.  See Holland v. State, 802 S.W.2d 696,
699B700 (Tex.
Crim. App. 1991).  Appellant failed to
assert any Confrontation Clause error in the trial court with respect to the
trial court=s limitation on his questioning
of Jacqueline Keeling, White, and Moore. 
Therefore, he has waived appellate review of this claim.  See Jenkins v. State, 912 S.W.2d 793,
815 (Tex. Crim. App. 1993).

Appellant asserts that the trial court improperly
prevented him from developing evidence admissible under Rule 613(b) that would
have established bias on the part of Thomas Keeling toward appellant.  In addition to his direct examination of
White and Moore, appellant attempted to question Jacqueline Keeling about the
relationship between Thomas Keeling and Moore. 
The trial court sustained the State=s
objection on relevancy grounds.  On
appeal, appellant contends that the excluded testimony of Jacqueline Keeling,
White, and Moore would have demonstrated bias and ill-will toward appellant on
the part of Thomas Keeling and was admissible under Rule 613(b).  However, the record reveals appellant failed
to preserve any error with respect to the excluded testimony of these three
witnesses.  








Error in the exclusion of evidence may not be
asserted on appeal unless the proponent perfected an offer of proof or a bill
of exceptions.  See Guidry v. State,
9 S.W.3d 133, 153 (Tex. Crim. App. 1999). 
Absent a showing of what such testimony would have been, or an offer of
a statement concerning what the excluded evidence would have shown, nothing is
preserved for appellate review.  See
Guidry, 9 S.W.3d at 153.  The record
in this case does not indicate what the excluded testimony would have
been.  Appellant did not make or request
the opportunity to make an offer of proof of his intended cross-examination of
Jacqueline Keeling or of his intended direct examination of White and
Moore.  Therefore, appellant did not preserve
error as to his second issue, and we need not reach its merits.  Accordingly, we overrule appellant=s second
issue.

Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed December 30, 2004.

Panel consists of Justices Anderson, Fowler, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).