COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| KEVIN RAMON GRAY, | § | No. 08-14-00103-CR |
| Appellant, | § | Appeal from the |
| v. | § | 372nd Criminal District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1320429D) |
| | § | |

## O P I N I O N[1]

Kevin Ramon Gray appeals the trial court's judgment convicting him of aggravated assault with a deadly weapon and sentencing him to eight years' imprisonment. In three issues, he complains of the sufficiency of the evidence (Issue One), the trial court's ruling on his motion to suppress (Issue Two), and the State's failure to produce the complaining witness at trial (Issue Three). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gray was charged with assaulting his wife, Deborah Gray, with a deadly weapon. The charge arose from events transpiring in the late night hours of March 27, 2013. At approximately 10:30 p.m., Arlington Police Officers Anthony Crowsey and Thomas Hruskocy responded to a

---

[1] This case was transferred to this Court from the Second Court of Appeals pursuant to an order issued by the Supreme Court of Texas. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

911 hang-up call originating from the Grays' townhome. Upon arriving at the scene, they learned that Deborah, clutching her throat in pain, was the caller. When Gray retreated into the townhome's interior, Officer Crowsey followed him to the dining area and instructed him to sit down at a small table. While Gray was seated, Officer Crowsey asked him to relate what occurred. Gray told Officer Crowsey that he and Deborah had gotten into an argument in their bedroom during which Deborah threatened to have someone come over and "kick his butt." The threat prompted Gray to get a knife:

> [A]nd raise[] it up [over his head] . . . in like a stabbing [down] motion . . . trying to scare [Deborah], . . . [not] trying to stab her, but . . . [believing that if he] [came] in and [gave] a stabbing motion that it would scare her into stop threatening him and stop the argument.

"[Deborah] slapped at the knife[,]" forcing it "into [Gray's] left hand." The two "tussled," at which point, Gray grabbed Deborah by the neck and pushed her down onto the bed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Gray contends that the evidence is insufficient to sustain his conviction. We disagree.

### *Standard of Review*

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). When reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v.*

2

*State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.

Under a legal sufficiency review, we may not substitute our judgment for that of the jurors, who are the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). We therefore defer to the jurors' resolution of these issues and to their responsibility to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89. In resolving what the facts are and what reasonable inferences may be drawn from them, the jurors may accept one version of the facts and reject another, and they may reject any part of a witness's testimony, even if uncontradicted. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).

### *Applicable Law*

A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2)(West Supp. 2015). The assault becomes aggravated when the person uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. § 22.02(a)(2)(West 2011). A deadly weapon is defined as "anything in the manner of its use or intended use is capable of causing death or serious bodily injury."[2] TEX.PENAL CODE ANN. § 1.07(a)(17)(B)(West Supp. 2015). Although a knife is not a

---

[2] "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(46)(West Supp. 2015).

3

deadly weapon *per se*, it becomes one if the person brandishing it, uses it, or intends to use it in a manner capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000).

### *Discussion*

When viewed in the light most favorable to the verdict, the evidence is sufficient to support the jury's verdict. The State established that Gray intentionally threatened Deborah with imminent bodily injury while exhibiting a deadly weapon. As recounted above, Officer Crowsey testified that Gray admitted to raising a knife over his head and bringing it down in a stabbing motion with the intent to scare, but not injure, Deborah. Although Gray related to Officer Crowsey that he meant only to scare Deborah while brandishing the knife, the jury was free to disbelieve this portion of Gray's account and, given the evidence presented, conclude that Gray intended to threaten Deborah with imminent bodily injury. The evidence permitting the jury to so conclude consisted of the manner in which Gray used the knife and his own words and actions. The knife, which was introduced into evidence and shown to the jury, is plainly capable of causing death or serious bodily injury. Its blade is approximately six inches long, appears razor sharp, and ends in a sharp point.

Gray argues that the evidence is insufficient to sustain his conviction because:

> The State did not corroborate the statement from the Appellant by the alleged victim, Mrs. Gray. The conviction is based on the testimony from Officer Crowsey as to what he recalls what the complaining witness told him.

As best we can surmise, Gray is contending that the State was required to corroborate the veracity of his wife's statements—as related by him and by her—to Officer Crowsey to connect him to the

4

charged offense.[3]   But Gray cites no authority, and we have found none, for the proposition that a victim's statements connecting the defendant to the charged offense must be corroborated before a police officer may testify to these statements.   It appears that, in advancing his proposition, Gray has appropriated from Article 38.14 of the Texas Code of Criminal Procedure the requirement that a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, inculpatory evidence tending to connect the accused to the offense.   *See* TEX.CODE CRIM.PROC.ANN. art. 38.14 (West 2005); *Smith v. State*, 332 S.W.3d 425, 439, 442 (Tex.Crim.App. 2011).   Of course, this evidentiary requirement is inapplicable here because Deborah was the victim, not an accomplice.   Accordingly, the State was under no obligation to corroborate the veracity of Gray's statement to Officer Crowsey recounting Deborah's threat. Moreover, we note that Officer Crowsey testified to what Gray, rather than Deborah, told him. With respect to Deborah, Officer Crowsey merely related to the jury that her statements furnished a basis for arresting Gray.

Gray's first issue is overruled.

## CUSTODIAL INTERROGATION

---

[3] The State interprets Gray's complaint as one challenging the sufficiency of the evidence based on its failure to corroborate his confession with independent evidence as required by the *corpus delicti* rule.   This rule of evidentiary sufficiency fashioned by the courts provides that, when the burden of proof is beyond a reasonable doubt, a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the *corpus delicti*.   *Hacker v. State*, 389 S.W.3d 860, 865 (Tex.Crim.App. 2013)(internal quotation marks omitted).   The rule's purpose is to ensure that a person is not convicted based solely on his own false confession to a crime that never occurred.   *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex.Crim.App. 2013)(internal quotation marks omitted).   To satisfy the rule, the State must adduce independent evidence "show[ing] that the 'essential nature' of the charged crime was committed by someone."   *Hacker*, 389 S.W.3d at 866.   The State contends that it met its obligation here because the following evidence tends to show that, more likely than not, someone committed aggravated assault with a deadly weapon:

> (1) "Officer Crowley's [sic] discovery of the knife, which Appellant used to threaten Ms. Gray in the bedroom, where the assault occurred[;]" and
>
> (2) "Officer Crowsey's observation of Ms. Gray holding her throat in pain."

In his second issue, Gray argues that the trial court erred by denying his pretrial motion to suppress his inculpatory statements to Officer Crowsey because he was in custody and had not been advised of his *Miranda* rights. We disagree.

### *Standard of Review*

Because questions of custody present a mixed question of law and fact, we afford almost total deference to a trial judge's "custody" determination when the questions of historical fact turn on credibility and demeanor. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007); *see also Jeffley v. State*, 38 S.W.3d 847, 853 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). When, however, the questions of historical fact do not turn on credibility and demeanor, we review a trial judge's "custody" determination *de novo*. *See Herrera*, 241 S.W.3d at 526-27; *Jeffley*, 38 S.W.3d at 853. The defendant, not the State, carries the initial burden of establishing that a statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526.

### *Applicable Law*

Article 38.22 of the Texas Code of Criminal Procedure prohibits the admission of an accused's statement resulting from a custodial interrogation unless he was advised of his *Miranda* rights and voluntarily waived those rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 2(b), 3(a)(2)(West Supp. 2015); *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Herrera*, 241 S.W.3d at 526 ("Our construction of 'custody' for purposes of Article 38.22 is consistent with the meaning of 'custody' for purposes of *Miranda*."). But the warnings required by Article 38.22 and *Miranda* apply only when a suspect is in custody. *See Herrera*, 241 S.W.3d at 526.

A person is "in custody" if, under the circumstances, a reasonable person would believe his

freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). We determine custody based on objective circumstances, and any subjective intent of law enforcement officers or the person being questioned are not controlling. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529.

As the Court of Criminal Appeals noted in *Dowthitt*, Texas courts have identified four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in a significant way; (2) when a law-enforcement official tells a suspect he cannot leave; (3) when law-enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) if there is probable cause to arrest and law-enforcement officials do not tell the suspect that he may leave. *Dowthitt*, 931 S.W.2d at 255, *citing Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App. 1985). The restraint upon freedom in the first three situations must be equivalent to that associated with an arrest as opposed to an investigative detention. *See Dowthitt*, 931 S.W.2d at 255. In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and such manifestation, considered in the totality of the circumstances, must lead a reasonable person to believe he is not free to leave. *Id*.

### *Discussion*

Considering the totality of the circumstances, several factors tend to show that Gray was not in custody when questioned by Officer Crowsey. First, Gray was not physically deprived of his freedom of action in a significant way. Although Gray was temporarily detained for investigative purposes by Officer Crowsey, Gray was not placed in handcuffs or physically

7

restrained in any manner while speaking to Officer Crowsey. Gray was formally arrested only after Officer Crowsey had probable cause to believe Gray had committed a criminal offense. Second, Officers Crowsey and Hruskocy did not communicate to Gray that he was not free to leave while being temporarily detained for investigative purposes. Although Officer Crowsey acknowledged that Gray was not free to leave during their initial encounter, Officer Crowsey was not asked, nor did he volunteer, if he communicated this to Gray. And third, Officers Crowsey and Hruskocy did not create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted. Gray sat at the kitchen table in his home when questioned by Officer Crowsey and remained there after providing his statement. Although Officer Hruskocy sat at the kitchen table with Gray "to make sure that he was sitting, being cooperative at that point" while Officer Crowsey questioned Deborah, the questioning Gray complains about had ceased by then. Furthermore, Officer Crowsey testified that Officer Hruskocy was not "physically holding on to [Gray][,]" and there is no evidence that Gray was surrounded by Officers Crowsey and Hruskocy when providing his statement. In sum, it is evident the restraint upon Gray's freedom of movement is not equivalent to that associated with an arrest. *See Dowthitt*, 931 S.W.2d at 255.

Gray asserts that he "was clearly in custody[,]" but apart from his conclusory assertion, he has failed to explain why this is necessarily so. Indeed, in the section of his brief devoted to this issue, Gray does not identify a single fact in support of his assertion, much less a reasoned explanation of how any of the facts, individually or collectively, constitute custody. Notwithstanding these briefing inadequacies, Gray has not established that the trial court abused its discretion in failing to suppress his inculpatory statements to Officer Crowsey. Contrary to

8

defense counsel's argument in the trial court, the mere fact that Officer Crowsey "walk[ed] in full uniform, gun at his waist," "agree[d] [Gray] was not free to leave[,]" and "kept [Gray] in one spot," without more, is insufficient to demonstrate that Gray was in custody.

Gray's second issue is overruled.

## CONFRONTATION CLAUSE

In his third issue, Gray asserts that the State's failure to produce Deborah at trial violated his Sixth Amendment right to confront and cross-examine her. We disagree.

### *Applicable Law*

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against her. U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923 (1965). The Clause prohibits the admission of out-of-court testimonial statements made by a witness who does not appear at trial unless she is unavailable and the defendant had a prior opportunity to cross-examine her. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365-66, 158 L.Ed.2d 177 (2004). But since the Sixth Amendment right to confront is a trial right, a Confrontation Clause complaint is waived on appeal if a defendant fails to object at trial on this basis. *Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex.Crim.App. 2005); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004).

### *Discussion*

Gray has not preserved his Confrontation Clause complaint for appellate review.

At guilt-innocence, Gray did not object to the testimony of any of the State's witnesses on the basis that it violated his constitutional right to confront Deborah. Defense counsel did raise a hearsay objection when the prosecutor asked Officer Crowsey to disclose what Deborah told him:

9

I think, Judge, that his answer is going to lead to the State trying to get into hearsay testimony through the back door that this Court has already ruled on.

Counsel was referring to the motion in limine she filed, and the trial court granted,[4] preventing the State and any of its witnesses from mentioning "any of [Deborah's] testimony and any of her statements and the officers testifying to anything she said or wrote down." The trial court noted and overruled the hearsay objection. But counsel's hearsay objection was not specific enough to alert the trial court to any claim that the State violated Gray's Sixth Amendment right to confront his accuser. *Reyna*, 168 S.W.3d at 179-80; *Paredes*, 129 S.W.3d at 535. This is because a hearsay objection and a Confrontation Clause objection "are neither synonymous nor necessarily coextensive." *Holland v. State*, 802 S.W.2d 696, 700 (Tex.Crim.App. 1991). Further, because a Confrontation Clause complaint is not fundamental error, we have no obligation to address it on appeal.[5] *See Marin v. State*, 851 S.W.2d 275, 278-80 (Tex.Crim.App. 1993)(a principal characteristic of fundamental rights, such as the rights to assistance counsel and to a jury trial, is that they can be relinquished only by affirmative action, not inaction), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App. 1997).

At punishment, Gray did lodge separate Confrontation Clause complaints to the admission of two exhibits—one containing jail booking prints and the other jail records—arguing that he had the right to confront the individuals who took the prints and created the records. The trial court overruled both objections. But Gray does not complain of the trial court's rulings on these

---

[4] The trial court granted it orally.

[5] In its brief, the State does address the merits of Gray's complaint. The State contends that Gray's right to confront and cross-examine Deborah was not implicated because neither Gray's inculpatory statements to Officer Crowsey nor Deborah's statements to Gray can be considered testimonial hearsay subject to the Confrontation Clause. According to the State, Gray's inculpatory statements are non-hearsay admission of a party opponent and Deborah's threat to Gray was not made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial.

10

matters, and it cannot be reasonably argued that these two Confrontation Clause objections are so broad in scope that they encompass an additional, unstated Confrontation Clause objection to the State's failure to produce Deborah at trial.[6]

Gray's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


December 2, 2015

                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[6] We note that Deborah testified on Gray's behalf at punishment.

11